UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEMART GLENN,<br><br>        *Plaintiff*,<br><br>v.<br><br>ROBERT WILKIE, Secretary of UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, on Behalf of Department of Veterans Affairs, agency,<br><br>        *Defendant*. | CASE NO. 2:18-cv-01162-BJR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE |

## I.     INTRODUCTION

Before the Court is Defendant Secretary Robert Wilkie's Motion for Summary Judgment. Dkt. No. 42. Along with his response to the motion, Plaintiff LeMart Glenn submitted a motion to strike portions of the Motion for Summary Judgment and several of the exhibits attached as impermissible hearsay. Dkt. No. 48. Having reviewed the motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will deny the Motion to Strike and grant the Motion for Summary Judgment. The reasoning for the Court's decision follows.

## II.  BACKGROUND

Plaintiff is African-American and employed by the Department of Veterans Affairs'[1] Nutrition and Food Service ("NFS") as a Cook Supervisor at the Puget Sound Healthcare System located in Seattle, Washington. Am. Compl., Dkt. No. 5 at ¶¶ 1.2, 2.1. This suit involves at least five allegedly discriminatory acts occurring roughly from June 2016 through the middle of 2017.[2]

First, between June and December 2016, Plaintiff claims he was subject to discriminatory treatment and harassment when he was temporarily reassigned from Seattle to the American Lake VA Medical Center south of Tacoma, Washington. *Id.* at ¶¶ 2.2–2.3. This reassignment was the result of an investigation into Plaintiff's conduct as supervisor. *See* Dkt. No. 42 at 3–5; *see also* Dkt. No. 43-3 (Temporary Job Assignment Memorandum); Dkt. No. 43-4 (Return to Duty from Reassignment Memorandum). According to Defendant, Plaintiff's second-line supervisor, Director of NFS Susan Brooks, received a number of complaints that several supervisors at the Seattle facility, including Plaintiff, were bullying and intimidating subordinates. Ms. Brooks conducted an investigation into the allegations, during which time Plaintiff was reassigned to

---

[1] The Court will refer to the Department of Veterans Affairs as, alternatively, "the Department," or "the VA."

[2] Plaintiff's response to the Motion for Summary Judgment includes numerous allusions to other allegedly harassing conduct, including a failure to provide him with a progress review, Dkt. No. 48 at 3, 23; assignment of duties below his role of supervisor, *id.* at 3, 19; a failure to timely return him to his duty station when transferred, *id.* at 4, 21; a failure to take threats against him by a subordinate seriously, *id.* at 5, 19; a false allegation of an inappropriate relationship with a subordinate, *id.* at 19; and that a white employee undeservedly received a higher annual review, *id.* at 21. Additionally, appended to his declaration, Plaintiff has included an 18-page timeline of unfair treatment at the VA. Dkt. No. 50-16. Plaintiff does not appear to advance these claims as independently actionable claims of discrimination but, instead, part of an ongoing hostile workplace. The Court treats them as such. Further, as discussed below, these allegations are not part of Plaintiff's formal complaint to the VA. Thus, to the extent that Plaintiff wished to raise them as independent claims, he has failed to exhaust his administrative remedies. *See infra* at 10 n.5.

2

American Lake.  *See* Dkt. No. 43-2 (Fact Finding Inquiry Memorandum).  The investigation sustained and substantiated the allegations against Plaintiff of bullying and intimidating subordinates.  Dkt. No. 42 at 2.  Plaintiff disputes the conclusions reached by the investigation claiming they are false and inaccurate.

Second, Plaintiff complains that after returning from reassignment on December 12, 2016 he received his 2016 Fiscal Year Performance Appraisal, in which he was rated "fully successful," a step down from his previous year's rating of "outstanding."  Dkt. No. 5 at ¶ 2.4.  This rating, both parties agree, was a result of Plaintiff's lower rating in the "Leading People" category in light of the investigation and its conclusion.  *See* Dkt. No. 42 at 2; Dkt. No. 48 at 2–3.

Third, on February 9, 2017, Plaintiff received a written admonishment that he claims was "vague and conclusory."  Dkt. No. 5 at ¶ 2.4.  An admonishment is the lowest form of discipline in the Department.  Plaintiff received the February 9 Admonishment as a result of the misconduct investigation's substantiation of the claims of bullying and intimidation.  Dkt. No. 42 at 6–7; *see also* Dkt. No. 43-8 (Admonishment).  As a result, Plaintiff was required to undergo additional training and was assigned a mentor.  *See* Dkt. No. 43-5 (Memorializing Return to Duty Memorandum).  The Admonishment was removed from Plaintiff's record after six months.  Dkt. No. 54 at ¶ 4.

Fourth, throughout this time, Plaintiff claims that his first-line supervisor, Operations Manager Daniel Atkins, "played games" with him, including harassing conduct such as switching Plaintiff's desk assignment and tossing chicken bones on his desk.  Dkt. No. 5 at ¶ 2.6.

Finally, Plaintiff claims he was passed over for a position as Temporary Operations Manager on account of his race.  Dkt. No. 5 at ¶ 2.10.  The position became available when Mr.

Atkins left the VA in February 2017. Dkt. No. 42 a 7–9. Interviews were conducted by Ms. Brooks and Jessica Petersen, Assistant Director for NFS, and a Hispanic candidate was chosen over Plaintiff in July of 2017. *Id.* at 8.

Based on these actions, Plaintiff first contacted the Department's Equal Employment Opportunity ("EEO") counselor on January 31, 2017.[3] In a letter dated April 26, 2017, the VA's Office of Resolution Management ("ORM") acknowledged Plaintiff's complaints, closed informal counseling, and invited Plaintiff to submit a formal complaint. Dkt. No. 43-10 (ORM Letter dated April 26, 2017). This letter lists four bases for Plaintiff's complaint: (1) the Admonishment, (2) the 2016 Appraisal, (3) the Reassignment, and (4) "Harassment/Hostile Work Environment" occurring "June 3, 2016 and ongoing" claiming "a history of discriminatory treatment by [Plaintiff's] supervisor, Mr. Daniel Atkins." *Id.* at 2. Plaintiff filed a formal Complaint of Employment Discrimination on May 3, 2017 listing these same actions. Dkt. No. 43-12 (Complaint of Employment Discrimination).

On June 16, 2017, ORM sent a letter partially accepting and partially rejecting Plaintiff's claims. Dkt. No. 43-11 (ORM Letter dated June 16, 2017). Specifically, the letter rejected Plaintiff's complaints based on the Reassignment and the 2016 Appraisal as independently actionable claims because he did not timely seek EEO counseling. *Id.* at 2–3. ORM accepted Plaintiff's claim based on the Admonishment as an independently actionable claim and all four

---

[3] There is some confusion as to whether Plaintiff first contacted ORM on January 31, 2017 or February 1, 2017. *See* Dkt. No. 50 at ¶ 23. Some of the internal VA documents say January 31, 2017, *see e.g.*, Dkt. No. 43-11 at 2, others say February 1, 2017, *see e.g.*, Dkt. No. 43-12 at 2. The difference is inconsequential so the Court will credit the early date, January 31, 2017, as it is more beneficial to Plaintiff in evaluating exhaustion of administrative remedies.

events as evidence of a hostile environment claim. *Id.* at 3.[4] The parties have not submitted evidence of other informal counseling or submission of another formal complaint. Plaintiff filed his case in this Court on August 8, 2018. Dkt. No. 1.

### III.   MOTION TO STRIKE

Along with his response to the Motion for Summary Judgment, Plaintiff submitted a motion to strike sections of the Motion for Summary Judgment and several exhibits attached thereto as impermissible hearsay. Dkt. No. 48 at 9–13. Specifically, Plaintiff seeks to strike the Fact Finding Inquiry Memorandum (Dkt. No. 43-2), the Return to Duty from Reassignment Memorandum (Dkt. No. 43-4), the Admonishment (Dkt. No. 43-8), and sections of the Motion for Summary Judgment (Dkt. No. 42) to the extent they rely on statements made by other employees in support of the claim that Plaintiff bullied or intimidated subordinates. Dkt. No. 48 at 11–13.

It is axiomatic that District Courts may only consider admissible evidence in ruling on a motion for summary judgment. *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 998 (9th Cir. 2019). Inadmissible hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). At the same time, at the summary judgment phase, district courts do not focus on the admissibility of the evidence's form, but instead on the admissibility of its contents. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Thus, even declarations that contain hearsay may be considered at summary judgment

---

[4] Specifically, the letter states that "[the Admonishment] has been accepted for investigation as an independent claim and your overall claim of hostile work environment ([all four events]) is accepted for investigation. [The Reassignment] and [the 2016 Appraisal] are dismissed as untimely independent claims, but will remain as events in your hostile work environment claim." Dkt. No. 43-11 at 3.

5

if they could be presented in an admissible form at trial.  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (citing *Fraser*, 342 F.3d at 1037).

After reviewing both the challenged statements and Defendant's reliance on them in his briefing, the Court determines that they do not constitute hearsay.  Here, the statements are not being relied on for the truth of the matter asserted, *i.e.* that Plaintiff was intimidating subordinates, but that the statements were in fact made and that the VA relied on them as non-pretextual reasons for conducting the investigation in the first place and issuing the Admonishment.  The exhibits document the underlying facts of the investigation; what actions were taken in interviewing witnesses; the investigation's conclusion; and the remedial actions taken in response to the investigation's findings.  Further, Plaintiff has not shown that, were there to be a trial, Defendant would be otherwise unable to produce the employees in question to testify as to their interactions with Plaintiff and what exactly they told the investigators during the investigation.

## IV.     MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 56 instructs that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Karasek v. Regents of Univ. of California*, 956 F.3d 1093 (9th Cir. 2020) (quoting *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)).  Further, a fact is "material," where it "might affect the outcome of the case." *Espinoza v. City of Seattle*, No. 17-cv-1709, 2020 WL 2098037, at *10

(W.D. Wash. May 1, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party. *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151 (9th Cir. 2020). The movant bears the initial burden of demonstrating that they are entitled to summary judgment. *Espinoza*, 2020 WL 2098037, at *11 (citing *Celotex*, 477 U.S. at 323). If the movant will not bear the burden of proof at trial, as is the case here, they can meet their initial burden by producing evidence negating an essential element of the nonmovant's case or by showing that the nonmovant lacks evidence essential to its claim. *Id.* (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)). If the movant meets their initial burden, the nonmovant must come forward with specific evidence based on which a factfinder could reasonably find in the nonmovant's favor. *Id.* (citing *Celotex*, 477 U.S. at 324).

### B. Exhaustion of Administrative Remedies

As a precondition to suit under Title VII, an aggrieved federal employee must exhaust his administrative remedies. 42 U.S.C. § 2000e-16(c); *Sommatino v. United States*, 255 F.3d 704, 707–08 (9th Cir. 2001); *see also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019). Title VII's regulatory scheme requires federal employees to notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct in order to provide the agency with a chance to investigate and attempt to remediate the issues informally. 29 C.F.R. § 1614.105(a)(1); *Sager v. McHugh*, 942 F. Supp. 2d 1137, 1142 (W.D. Wash. 2013).

Defendant claims that Plaintiff failed to exhaust his administrative remedies for three of the independently actionable discriminatory acts: (1) the Reassignment, (2) the 2016 Appraisal, and (3) the failure to hire as Temporary Operations Manager. Dkt. No. 42 at 12–13. There is no

question that Plaintiff's contact with an EEO counselor was well beyond the 45 days or not at all for these claims. Plaintiff first contacted an EEO counselor on January 31, 2017 and raised both the Reassignment and the 2016 Appraisal. The Reassignment occurred on June 3, 2016, 242 days before Plaintiff's contact with the EEO counselor, and the 2016 Appraisal occurred on December 12, 2016, 50 days before the contact. ORM correctly rejected these claims because they were time barred. This Court finds the same.

Plaintiff claims that his delay should be excused or equitably tolled because, at the time of the actions, he had no basis for believing the actions were the result of discrimination. Dkt. No. 48 at 6, 13–18. According to Plaintiff, he did not realize the Reassignment and the 2016 Appraisal were discriminatory until he met with Mr. Atkins on December 27, 2016 to discuss his 2016 Appraisal and realized that there were "no facts to support his downgraded evaluation." *Id.* at 6. Alternatively, Plaintiff claims his claims should be tolled because he did not understand that he was required to file new charges for each act of discrimination and his belief that additional filings would have been futile. *Id.*

The Court finds that Plaintiff does not meet the requirements for equitable tolling. In order to establish equitable tolling, a plaintiff must show (1) that he pursued his rights diligently and (2) that some extraordinary circumstance prevented timely filing. *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Leong v. Potter*, 347 F.3d 1117, 1122–23 (9th Cir. 2003). Generally, when properly invoked, mandatory claim-processing rules "must be enforced." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17–18 (2017). However, "if an employee did not at the time of the alleged discriminatory action know or have reason to know that an employment decision was discriminatory in nature,

the time limits for filing an administrative complaint may be tolled." *Al-Saffy v. Vilsack*, 827 F.3d 85, 98 (D.C. Cir. 2016) (quoting *Stoller v. Marsh*, 682 F.2d 971, 974 (D.C. Cir. 1982)).

Here, however, Plaintiff's own testimony undermines his claim to ignorance. Plaintiff claims he only realized that the Reassignment and the 2016 Appraisal were discriminatory after he met with his supervisor in December of 2016 and his supervisor was unable to provide adequate cause for both. Dkt. No. 48 at 6. But, Plaintiff had long complained about lack of context for those actions including at the time they occurred. *See* Dkt. No. 50 at ¶ 7 (Declaration of LeMart Glenn stating, "I was not informed of what the alleged behavior involved"). Additionally, his claim that he was never informed that he needed to file a separate claim of discrimination for each individual allegedly discriminatory act does not apply to the Reassignment and 2016 Appraisal because, at the time they occurred, Plaintiff had no pending claims. Further, Defendant has presented evidence that VA employees receive annual training on the 45-day EEO counsel contact requirement, which Plaintiff has failed to refute. *See* Dkt. No. 53 at 6; *see also* Dkt. No. 45 at 1 (Declaration of VA EEO Specialist Ronnie Jones). Finally, Plaintiff has presented no evidence that submitting his claims at that time would have been futile outside of his subjective belief. *See* Dkt. No. 50 at ¶ 36. Overall, Plaintiff presents no extraordinary circumstances warranting equitable tolling for either the Reassignment or the 2016 Appraisal.

As for Plaintiff's complaint regarding the position of Temporary Operations Manager, Plaintiff has provided no evidence that he ever raised this complaint with ORM. It is not part of his formal complaint and not addressed by ORM in its correspondence. Plaintiff also made no attempt to amend his existing EEO Complaint to include this claim. Thus, Plaintiff has failed to exhaust as to this claim. *See Leong*, 347 F.3d at 1123 (quoting *Leorna v. U.S. Dep't of State*, 105

9

F.3d 548, 551 (9th Cir. 1997) ("once a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements")); *see also* Dkt. No. 43-10 (ORM Letter dated April 26, 2017 addressed to Richard Wooster, Plaintiff's counsel in the instant case, on Plaintiff's behalf).[5]

### C. Discrimination and Hostile Work Environment Claims

#### 1. *Discrimination*

The Court examines Plaintiff's remaining claims for Title VII discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *See Weil*, 922 F.3d at 1002; *see also Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378 (W.D. Wash. 2019). Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination, including that he (1) belongs to a protected class; (2) was performing his job satisfactorily; (3) suffered an adverse employment action; and (4) that his employer treated him differently than a similarly situated employee who does not belong to the same protected class. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). If he can do so, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the challenged conduct. If he is able to do so, the burden shifts back to Plaintiff to produce evidence that Defendant's proffered nondiscriminatory reasons are merely pretextual.

Two alleged independently actionable claims of discrimination remain: the Admonishment and the harassing conduct of Mr. Atkins.

---

[5] As discussed *supra*, the failure to raise the other conduct of which Plaintiff complains in his response to summary judgment is also fatal to these claims as independent actionable claims. *See supra* at 2 n.2.

### a. *Admonishment*

As regards the Admonishment, Defendant claims it was a legitimate act taken as a result of an impartial investigation into alleged misconduct by Plaintiff. Dkt. No. 42 at 6–7, 16. In support of his burden on summary judgment, Defendant has produced the paper trail documenting the allegations, investigation, and the Admonishment itself, which states the grounds for its finding of conduct unbecoming of a Federal Supervisor. *See* Dkt. No. 43-8.

Plaintiff opposes summary judgment on this claim arguing that the Admonishment was baseless and prompted by discrimination. *See* Dkt. No. 48 at 21–24. As evidence, he points to the three anonymous complaints that initiated the misconduct investigation and highlights that in those complaints no charges are levelled against him specifically. *Id.* at 3, 21; *see also* Dkt. Nos. 50-10, 50-11, 50-12. Based on the lack of specific allegations at the initiation of the investigation, Plaintiff concludes the whole investigation as it relates to him and its outcomes were built on pretext for racial discrimination. *See* Dkt. No. 50 at ¶¶ 9, 21, 23.

Reviewing the evidence produced by both parties, the Court concludes that the first two steps of the *McDonnell Douglas* framework have been met. Plaintiff is a member of a protected class, he has at least alleged his performance was satisfactory, that he suffered an adverse action by being admonished, and that the adverse action was taken on account of his race. Defendant, in turn, has produced the records leading to the Admonishment, pointing to the legitimate, nondiscriminatory reason of Plaintiff's alleged bullying and intimidating conduct towards subordinates. Thus, it falls to Plaintiff to come forward with evidence of pretext.

An employee may show that an employer's proffered nondiscriminatory reason is pretext if the explanation is "unworthy of credence because it is internally inconsistent or otherwise not

believable." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000); *see also Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (a plaintiff may show pretext "either 'directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence'")).

Here, Plaintiff's arguments as to pretext are unavailing. Review of the three anonymous complaints clearly paints favoritism and unequal treatment of subordinates by supervisors at the Puget Sound Healthcare System as systemic. *See, e.g.* Dkt. No. 50-11 at 2 ("[employee] said she going make big report to the union on managers because they know whats going on and they do nothing"); *Id.* ("[w]e want the managers hear these problems because they keep happening to us and we know [Mr. Atkins] is going to do nothing . . ."); *id.* at 2 ("[w]e want HR to come talk with us bout unfair problems here and why some managers not fair to all employees"). Additionally, Ms. Brooks testified that the fact-finding investigation occurred in two phases, the first initiated by the two anonymous letters and a second based on the results of the first investigation and the third anonymous letter. Dkt. No. 49-2 at 85:14–20. Based on the evidence amassed by the time of the second phase of fact finding, Ms. Brooks testified that "it was felt that the whole service line needed to be interviewed." *Id.* at 85:19–20; *see also id.* at 90:3–10 ("Q. Was there an anonymous letter about Mr. Glenn, or was it just the inquiry that was started in response to an anonymous letter that cause Mr. Glenn to be sent away? A. To the best of my recollection, it was information that came from the fact-finding, the first fact-finding, where there were several allegations pertaining to Mr. Glenn . . . .").

Thus, it is easy to see that, while Plaintiff is not mentioned specifically in the anonymous

12

letters, Ms. Brooks' investigation would have focused on all the supervisors at the facility and their conduct, including Plaintiff. After interviewing 51 people, the Admonishment states that 24 of the individuals interviewed testified that Plaintiff intimidated them. Dkt. No. 43-8 at 2. Thus, contrary to Plaintiff's argument, the investigation was not baseless or unfounded. Plaintiff is unable to provide any other evidence to support a claim of pretext other than his subjective intuition.

> b. *Mr. Atkins' Harassing Conduct*

As regards the conduct of Mr. Atkins, including the reassignment of Plaintiff's desk and the allegation that Mr. Atkins put chicken bones on Plaintiff's desk, Defendant claims that Plaintiff fails to make out a prima facie case because these actions do not constitute adverse employment actions. Dkt. No. 42 at 9–10, 17. The Court agrees.

In the Title VII context, an "adverse employment action" is one that "significantly alters the terms and conditions of an employee's job, such as termination, demotion accompanied by a decrease in pay, or a material loss of benefits or responsibilities." *Espinoza*, 2020 WL 2098037, at *12 (quoting *Spann v. City of Los Angeles*, No. 14-cv-1751, 2014 WL 12703994, at *3 (C.D. Cal. Apr. 3, 2014)); *see also Campbell*, 892 F.3d at 1012 (quoting *Davis*, 520 F.3d at 1089) ("[f]or claims of disparate treatment under Title VII, an adverse employment action is one that 'materially affects the compensation, terms, conditions, or privileges of employment'").

First, the reassignment of a desk did not significantly alter the terms of Plaintiff's terms of employment. Defendant has produced evidence that the desk Plaintiff was reassigned was one of three supervisor's desks, and that there is little difference between the three. *See* Dkt. No. 42 at 9; Dkt. No. 46 at ¶ 5. Plaintiff shows no other harm. Second, even considering how disgusting an act throwing chicken bones is, and the possible racial implications of such an act, the action cannot

be said to change the terms and conditions of Plaintiff's employment. As such, neither act can stand as an independent claim.

    *2. Hostile Work Environment*

To establish a prima facie case of hostile work environment under Title VII, Plaintiff must show that (1) he was subjected to verbal or physical conduct because of his membership in a protected class; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Djitte v. Delta Glob. Serv.*, No. 19-cv-00480, 2020 WL 1689732, at *2 (W.D. Wash. Apr. 7, 2020) (citing *Meritor v. Savings Bank v. Vinson*, 477 U.S. 57 (1986)); *see also Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Courts look at the totality of the circumstances when examining a claim of hostile work environment including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Djitte*, 2020 WL 1689732, at *2 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). Additionally, the working environment must be both subjectively and objectively be perceived as abusive." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)).

As the Supreme Court held in *National R.R. Passenger Corp. v. Morgan*, hostile work environment claims are different then claims of discrimination based on discrete acts because, by their very nature, they involve repeated conduct. 536 U.S. 101, 115 (2002). Since the complained of conduct "cannot be said to occur on any particular day," the Supreme Court held that courts

14

may still look at "component acts of the hostile work environment [that] fall outside the statutory time period" so long as "an act contributing to the claim occurs within the filing period." *Id.* at 115, 117.  Time barred acts such as the Reassignment, the 2016 Appraisal, and the failure to hire as Temporary Operations Manager may then be considered as part of one hostile environment claim so long as they are related to none time barred claims. *Id.* at 117–18; *see also id.* at 120 ("[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period").  In doing so, the Court considers whether the events were "'sufficiently severe or pervasive,' and whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting *Morgan*, 536 U.S. at 116, 120).

Defendant claims that none of the acts Plaintiff complains of, and which were investigated by ORM, were sufficiently severe or pervasive to alter the terms of Plaintiff's employment.  Dkt. No. 42 at 18.  Plaintiff points to all of the acts mentioned herein, from the Reassignment to his failure to be hired as Temporary Operations Manager, as evidence of an ongoing hostile work environment.  Dkt. No. 48 at 18–24.  At the core of his demonstration of racial animus, is the allegation that his Reassignment and subsequent Admonishment had no other conceivable basis, as he claims his superiors were unable to show sufficient justification for those actions.  *See, e.g.*, Dkt. No. 50 at ¶ 30.

The Court finds that Plaintiff has failed to provide sufficient evidence to support his hostile work environment claim.  First, in line with the Court's holdings *supra*, the VA's decision to

15

initiate a misconduct investigation, reassign Plaintiff, and issue the Admonishment were not baseless but, instead, based on legitimate concerns raised by subordinates. *See supra* at 11–13. Further, the investigation's finding of conduct unbecoming of a Federal Supervisor supports the rating Plaintiff received on his 2016 Appraisal. Finally, as the Court has already found, Mr. Atkin's conduct cannot be said to have significantly altered the conditions of Plaintiff's employment. *See supra* at 13–14.

Even looking further into the most disgusting incident leveled at Plaintiff, that of the chicken bones thrown on his desk, Ms. Brooks claims she did not hear of this incident until it was raised at the parties' mediation. *See* Dkt. No. 42 at 9, 18; *see also* Dkt. No. 43-1 at 39:10–23 (Deposition of Susan Brooks). When addressing a hostile environment created by a supervisor, such as Mr. Atkins, an employer is vicariously liable for the actions of the supervisor unless no "tangible employment action" has been taken. *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 877 (9th Cir. 2001). Where no employment action has taken place, the employer may raise an affirmative defense including that the employer "exercised reasonable care to prevent and correct promptly any [] harassing behavior." *Id.*

Here, throwing chicken bones, no matter how disgusting an act, cannot be said to be a tangible employment action. Further, Ms. Brooks, and the VA by extension, could not have taken steps to correct such behavior if she did not know it was occurring. Plaintiff does not provide any tangible evidence that he raised the concerns about Mr. Atkins before bringing the complaint at issue here.

Plaintiff has also complained about conduct completely unrelated to management, including false allegations and threatening conduct by subordinates. *See surpa* at 2 n.2. The Court

cannot identify a concerted harassing effort that significantly changed the terms and conditions of Plaintiff's employment.  What is left is some justified conduct which Plaintiff subjectively disagrees and an assortment of other vague accusations that are neither concerted, severe, nor pervasive.

## V.     CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment, Dkt. No. 42, and DENIES Plaintiff's Motion to Strike, Dkt. No. 48.

DATED this 8th day of July, 2020.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE